on that of the owner. This was sufficient for dismissing the claim in Delaware, as the owner was present and himself made the contracts attempted to be enforced by an implied lien on the vessel. The chief justice having thus disposed of the case before him on undoubted principles of maritime law, none of which affect the case now to be decided, offers a remark upon the case of The General Smith,—4 Wheat. [17 U. S.] 438,—in which, he says, no distinction is taken between contracts made by the owner when the vessel is in a foreign port, or in the port of a state to which she does not belong. The chief justice confesses that the distinction is not very clear or satisfactory to him, but he adheres to it because it is expressly recognised in the case of The St. Jago de Cuba [supra]. The distinction alluded to is certainly established by other adjudications, going even so far as to say that when the owner has an agent with funds where the contracts are made and the work done, they are considered to be on the personal credit of the owner and not of the vessel.

The case in Delaware was, then, decided on the ground I have mentioned, but to prevent misapprehension of the opinion of the court in relation to other parts of the case, the chief justice proceeded to give his views or impressions of some of the circumstances, which are more immediately presented to our consideration. He says, "the court must not be understood to decide that there would have been the implied lien on the vessel if the contracts had been made by the master in the absence of the owner." He thinks "there would have been strong objections to it," for he doubted whether the mere hull, without masts and spars, and not documented by any custom-house, when at Philadelphia for the purpose of being finished as a vessel, would be said to have its legal home in Delaware, merely because Delaware was the home of the owner. Nor was he prepared to say that the rigging of a new vessel, in order to fit her for the first time for sea, comes within the views or language of the maritime law, which gives the lien to workmen and material men for repairs. I think the doubt is a reasonable one. But reasonable as this doubt is, it will not be found to affect the claim of the libellant in this case. A general reference to the evidence of this case will show not only how different it is from that decided in Delaware, but how entirely it is clear of the objections and doubts suggested by the chief justice in the conclusion of his decree.

1. The contract was made by the libellant with the master of the vessel, and not with the owner, nor was the owner present at the port at the time the contract was made and the cables furnished.

2. The vessel did not come to this port to be fitted out at the time the cables were supplied, but was fully and completely equipped and actually employed in the coasting trade for which she was designed, having before performed other similar voyages. Her fitting and equipment was completed in September, 1833, after which she was taken to the Delaware district, where her owner resided, and made voyages from and to that district, the chains in question not being furnished for a considerable time. They were contracted for in November, when the old chain was delivered, and the new one in the December following. The sloop was then taking in coal to go to New York, and was lying in the Schuylkill, where it is not pretended the original equipment was made.

3. The sloop was regularly documented, enrolled, and licensed as a coaster at the custom-house of the Delaware district. This was done at Wilmington, immediately on her return to Delaware, when her fitting out was completed, in September, and between that period and the months of November and December, she had been employed in her regular business voyages.

4. She did not get these cables for the first time, so as to take from the supply the character of repairs and give them the character of an original fitting out. It is clearly in proof that the first cables furnished to this sloop were purchased of one B. J. Pearson, and she had sailed with this chain, and the anchors got at the same time from the same person, from September until the others were obtained from the libellant.

In all these material points the case before us differs from that decided by the chief justice, and the lien claimed by the libellant is fully maintained by the principles of maritime law adopted by the chief justice in conformity with the settled doctrines of the supreme court as well as the English authorities.

Decree for the libellant for the sum of $188 15, but without interest.

SARCHET (UNITED STATES v.). See Case No. 16,224.

SARDO (BESTOR v.). See Case No. 1,363.

## Case No. 12,358.
### SARDO v. FONGERES.
[3 Cranch, C. C. 655.] [1]

Circuit Court, District of Columbia. Dec. Term, 1829.

GAMING—BILLIARDS—ACTION TO RECOVER MONEY WON.

Money won at billiards is money won at play, within the 5th section of 9 Anne, c. 14, and cannot be recovered if more than £10 be won at one time; which section of that statute is in force in the county of Washington.

Appeal from the judgment of a justice of the peace for $50, of which $48 were won at billiards at one time, and $2 were for the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

use of the billiard-table, the plaintiff [Michael Sardo] below being the owner of the table.

Mr. Marbury, for appellant [Lewis Fongeres], contended that the debt was void by the 5th section of the English statute of 9 Anne, c. 14, which was in force in Maryland, on the 27th February, 1801, and adopted as a part of the law of Maryland, as they then existed; the amount won at one time being more than £10. 1 Com. Cont. 41.

Mr. Wallach, and Mr. Elkins, for appellee, contended that, as the Maryland act of 1797 (chapter 110), respecting gaming-tables, excepted billiard-tables, all gaming at billiards was lawful; and that money won at billiards was not within the English statute of 9 Anne, c. 14; and they cited —— v. Bland, 3 Burrows, ——, and Earl of March v. Pigot, 5 Burrows, 2802, and Act Md. 1797, c. 110.

THE COURT (THRUSTON, Circuit Judge, absent) reversed the judgment, with costs of this court, and entered judgment for the appellee for $1, for the use of the table, he being the owner thereof.

## Case No. 12,359.

SARGEANT et al. v. FIRST NAT. BANK.

[7 Reporter, 231;[1] 6 Wkly. Notes Cas. 370; 26 Pittsb. Leg. J. 191.]

Circuit Court, E. D. Pennsylvania. Jan. 25, 1879.

PRACTICE IN EQUITY—DISMISSAL FOR WANT OF PROSECUTION.

1. Where a plaintiff has not taken testimony in support of his bill within the three months after issue formed, as allowed by rule 69, the court will not on that account dismiss the bill for want of prosecution.

2. That the plaintiff in such case will merely be deprived of the testimony with which diligence would have supplied him, he will forfeit no other right.

Motion to dismiss bill for want of prosecution. In this case after the bill had been filed, an answer was put in, and on October 3, 1878, a replication. No testimony had been taken prior to the filing of the motion to dismiss.

G. T. Bispham, for the motion. Equity rule 69, Sup. Ct. Rules (Ed. 1866), allows "three months and no more" for taking of testimony after the cause is at issue, unless the time is enlarged on cause shown. Here more than that time has elapsed. The plaintiffs should be forced to go on, or their bill be dismissed.

A. Sydney Biddle, contra. The rule gives no power to the court to dismiss a bill.

McKENNAN, Circuit Judge. The court has no power to make the order asked for. The rule which is binding upon this court provides that no more time than three months shall be allowed for taking testimony without a spe-

[1] [Reprinted from 7 Reporter, 231, by permission.]

cial order. But suppose the testimony had been taken, the case must take the usual course and wait for its turn on the regular argument list. All that the rule requires is that the evidence shall be in within a fixed time, if not it is at the complainant's peril, but he is then only deprived of the testimony which diligence would have supplied him with and loses none of his other rights. Motion denied.

SARGEANT (HART, B. & M. MANUF'G CO. v.). See Case No. 6,156.

## Case No. 12,360.

SARGEANT v. STATE BANK OF INDIANA.

[4 McLean, 339.][1]

Circuit Court, D. Indiana, May Term, 1848.[2]

DEDICATION—BOND TO CONVEY — PROCEEDINGS — STATUTE—LAPSE OF TIME.

1. By certain statutes, provision is made for establishing seats of justice in Indiana. Commissioners were appointed, and other officers, who were to receive donations of land, or purchase the same, etc.

2. In establishing the seat of justice for Tippecanoe county, certain proceedings were had, under the law, and a bond was taken from Samuel Sargeant, "to the board of justices of Tippecanoe county," to convey to them, when they should be organized, certain lots for public purposes.

3. The seat of justice being established at Lafayette, in a summary mode provided, suit was brought against the heirs of Sargeant, for a title to the property which their ancestor agreed to convey. A decree of conveyance was entered, and the conveyance, in pursuance thereof, was executed.

4. The property thus conveyed has become very valuable, and the heirs have brought an ejectment to recover it, on the ground that the proceedings were illegal and void by which a decree of title was obtained.

5. The bond, though it bound the obligor to convey to a board not in esse, is not void or inoperative.

6. It is fairly within the statute.

7. The court held, that notice was given to the heirs, and this is conclusive in the case. The fact of notice can not collaterally be denied.

8. But the dedication is good at common law, if the statute had not been technically complied with.

9. The property thus donated, by improvements has become immensely valuable.

10. And after the lapse of many years enjoyed by the public, the title must be held good.

[This was an action of ejectment brought by Phineas O. Nabby, Jabez and Benjamin B. Sargeant, heirs of Samuel Sargeant, against the State Bank of Indiana.]

Smith & Lockwood, for plaintiffs.
White & Baird, for defendant.

OPINION OF THE COURT. The plaintiffs, heirs of Samuel Sargeant, who claimed under the patentee by deed, claim the lots in controversy, and also other grounds with-

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 12 How. (53 U. S.) 371.]